[No. A124534. First Dist., Div. Five. Feb. 5, 2010.]

In re E.O. et al., Persons Coming Under the Juvenile Court Law.
SAN FRANCISCO HUMAN SERVICES·AGENCY, Plaintiff and
Respondent, v.
N.M., Defendant and Appellant.

COUNSEL

Dennis J. Herrera, City Attorney, Kimiko Burton, Lead Attorney, and Jennifer K. Williams, Deputy City Attorney, for Plaintiff and Respondent.

Sharon S. Rollo, under appointment by the Court of Appeal, for Defendant and Appellant.

## OPINION

**JONES, P. J.**—N.M. appeals, contending the juvenile court erred when it denied his request to be declared a presumed father. We conclude the trial court applied the applicable statutes correctly and will affirm.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

On June 3, 2008, the San Francisco Human Services Agency (the Agency) filed a petition alleging that 14-year-old E.O. and her seven-year-old sister Y.O. were dependent children within the meaning of Welfare and Institutions Code section 300. The petition alleged the girls' mother, N.O. (mother), had failed to protect E.O. from repeated sexual abuse by the mother's boyfriend. The petition named appellant as the alleged father of the girls.

The juvenile court held a detention hearing the following day. Appellant appeared and the court appointed counsel to represent him. The court detained E.O. and Y.O. and placed them in the custody of a relative.

The social worker assigned to the case filed a report on July 7, 2008. It noted that appellant was the biological father of both girls but that he had had no contact with either of them until about four months ago. The report recommended that reunification services be offered to mother but not appellant because he was merely a biological father who had not obtained presumed father status.

The following day, appellant filed a notice of a judgment that had been entered six years earlier on July 19, 2002, finding him to be the father of E.O. and Y.O. and stating he had the obligation to pay child support.

The social worker submitted a supplemental report on August 22, 2008. It noted appellant had begun weekly visits with E.O. and Y.O., but that he did not have any sort of father-daughter relationship with them. Neither girl wanted to live with appellant because they did not know him. Once again, the

report recommended that appellant not receive reunification services because he had not attained presumed father status.

The court held a settlement conference on August 27, 2008. N.O. submitted to the petition and the court ordered that she receive reunification services. Appellant was not provided reunification services and the court denied his attorney's oral request that he be granted presumed father status.

On January 9, 2009, a status report was filed. It stated appellant continued to attempt weekly visits with E.O. and Y.O. but that E.O. sometimes refused to meet with him.

A six-month review hearing was conducted on January 29, 2009. After hearing the arguments presented, the court continued the dependency for another six months and ordered that mother continue to receive reunification services. At the hearing, appellant made an oral request that he be granted presumed father status. The Agency opposed the request noting that appellant had never lived with the girls and that he had been absent for the vast majority of their lives. The court declined to rule on the request because appellant had not made a formal motion.

That same day, appellant filed a declaration of parentage with the court. He claimed he had tried to visit with the girls over the years but that "their mother prevented [him] from contacting them." Appellant attached a parentage study to the statement that showed there was a 99 percent probability that he was the father of both E.O. and Y.O.

On February 9, 2009, appellant filed a formal motion asking that he be declared the presumed parent of E.O. and Y.O.

The juvenile court conducted a hearing on appellant's motion on February 20, 2009. Counsel for the Agency and the children both opposed appellant's request. Appellant testified on his own behalf and admitted he had never lived with mother. Appellant also admitted that he learned E.O. was his daughter several years after she was born when he dated mother for a year. Appellant said he did not establish a relationship with E.O. at that time because he thought he was unable to visit the girls because he had failed to pay child support.

The trial court considering this evidence denied appellant's request for presumed father status. The court stated that it was troubled by appellant's admission that he began dating mother again years after E.O. was born, and that he was aware of her existence, but he had done nothing to establish a relationship with her.

## II.  *DISCUSSION*

Appellant contends the juvenile court erred when it denied his request for presumed father status. Appellant argues that as a result of that error, he was precluded from being "considered for custody and, possibly, services."

■  The dependency system recognizes four classes of fathers: alleged, natural, presumed, and de facto. (*In re A.A.* (2003) 114 Cal.App.4th 771, 779 [7 Cal.Rptr.3d 755].) An alleged father may be the father of a dependent child. However, he has not yet been established to be the child's natural or presumed father. (*Ibid.*) A natural father is one who has been established as a child's biological father. The term "natural father" means that while the man's biological paternity has been established, he has not yet achieved presumed father status. (*Ibid.*) A presumed father is "one who 'promptly comes forward and demonstrates a full commitment to his paternal responsibilities— emotional, financial, and otherwise . . . .' " (*In re Jerry P.* (2002) 95 Cal.App.4th 793, 801–802 [116 Cal.Rptr.2d 123], fn. omitted.) A de facto father is one who has, on a day-to-day basis, assumed the role of a parent for a substantial period of time. (*In re A.A., supra,* 114 Cal.App.4th at p. 779.)

Only presumed fathers are entitled to reunification services and to possible custody of the child. (*In re Jerry P., supra,* 95 Cal.App.4th at p. 801.) In order to become a presumed father, a man "must" fall within one of the categories enumerated in Family Code section 7611.[1] (*In re Vincent M.* (2008) 161 Cal.App.4th 943, 954 & fn. 11 [74 Cal.Rptr.3d 755]; *Francisco G. v.*

---

[1] Family Code section 7611 states:

"A man is presumed to be the natural father of a child if he meets the conditions provided in Chapter 1 (commencing with Section 7540) or Chapter 3 (commencing with Section 7570) of Part 2 or in any of the following subdivisions:

"(a) He and the child's natural mother are or have been married to each other and the child is born during the marriage, or within 300 days after the marriage is terminated by death, annulment, declaration of invalidity, or divorce, or after a judgment of separation is entered by a court.

"(b) Before the child's birth, he and the child's natural mother have attempted to marry each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:

"(1) If the attempted marriage could be declared invalid only by a court, the child is born during the attempted marriage, or within 300 days after its termination by death, annulment, declaration of invalidity, or divorce.

"(2) If the attempted marriage is invalid without a court order, the child is born within 300 days after the termination of cohabitation.

"(c) After the child's birth, he and the child's natural mother have married, or attempted to marry, each other by a marriage solemnized in apparent compliance with law, although the attempted marriage is or could be declared invalid, and either of the following is true:

"(1) With his consent, he is named as the child's father on the child's birth certificate.

"(2) He is obligated to support the child under a written voluntary promise or by court order.

"(d) He receives the child into his home and openly holds out the child as his natural child.

*Superior Court* (2001) 91 Cal.App.4th 586, 595 [110 Cal.Rptr.2d 679]; *In re Zacharia D.* (1993) 6 Cal.4th 435, 449 [24 Cal.Rptr.2d 751, 862 P.2d 751].)

Here, the only provision of Family Code section 7611 that might possibly apply is subdivision (d), which states a man is a presumed father if he "receives the child into his home and openly holds out the child as his natural child." Appellant did not establish that he received E.O. and Y.O. into his home or that he openly held them out as his natural children. The record indicates appellant *never* lived with E.O. and Y.O. and that he ignored them the vast majority of their lives. Because appellant did not establish that he came within any of the categories set forth in Family Code section 7611, the court correctly declined to declare him a presumed father.

Appellant contends his failure to come within any of the categories set forth in Family Code section 7611 is irrelevant because the July 19, 2002, paternity judgment declared him to be the father of E.O. and Y.O. Noting that under Family Code section 7636 a "judgment . . . of the court determining the existence . . . of the parent and child relationship is determinative for all purposes . . ." appellant argues the paternity judgment "required the juvenile court to consider [him] the children's presumed father."

█ Appellant has not cited any authority that holds a paternity judgment by itself requires that a man be declared a presumed father, and such a ruling would be unwarranted. As we have noted, case law holds that in order to become a presumed father, a man "must" fall within one of the categories set forth in Family Code section 7611. (*In re Vincent M., supra,* 161 Cal.App.4th at p. 954 & fn. 11; *Francisco G. v. Superior Court, supra,* 91 Cal.App.4th at p. 595; *In re Zacharia D., supra,* 6 Cal.4th at p. 449.) A prior paternity judgment is simply not one of the ways set forth in Family Code section 7611 that a man can achieve presumed father status.

Furthermore, appellant's argument on this point misconstrues the nature of the prior judgment. A paternity judgment is, as the name implies, a judicial determination that a parent-child relationship exists. It is designed primarily to settle questions of biology and provides the foundation for an order that the father provide financial support. For example the judgment at issue here declared appellant to be one of E.O. and Y.O.'s "parents" and states he had

"(e) If the child was born and resides in a nation with which the United States engages in an Orderly Departure Program or successor program, he acknowledges that he is the child's father in a declaration under penalty of perjury, as specified in Section 2015.5 of the Code of Civil Procedure. This subdivision shall remain in effect only until January 1, 1997, and on that date shall become inoperative.

"(f) The child is in utero after the death of the decedent and the conditions set forth in Section 249.5 of the Probate Code are satisfied."

the obligation to provide them "$0.00" in monthly child support. Presumed father status, by contrast, is concerned with a different issue: whether a man has promptly come forward and demonstrated his " 'full commitment to his paternal responsibilities—emotional, financial, and otherwise.' " (*In re Jerry P., supra*, 95 Cal.App.4th at pp. 801–802.) We would endorse "an interpretation that would lead to absurd consequences" if we were to conclude that a paternity judgment that is focused narrowly on biological and financial issues is determinative on subsequent issues that are unrelated to and far beyond its scope. (*In re M.B.* (2009) 174 Cal.App.4th 1472, 1477 [95 Cal.Rptr.3d 359].) We decline to read the applicable statutes in an absurd manner. (*Ibid.*)

■ We conclude the trial court properly denied appellant's request for presumed father status.

### III. *DISPOSITION*

The order declining to award appellant presumed father status is affirmed.

Simons, J., and Needham, J., concurred.

On March 3, 2010, the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 20, 2010, S181600.